## James Demain et al. *v.* Hugh Cassidy.

Chancery. *Receiver. His duties and liabilities.*
　　Where a stock of goods is committed to the charge of a receiver, it is his duty,‿
in the absence of special authority, to take the same and keep it safely, sub
ject to the order of the court. But if the receiver should sell the goods, he
can only be required to account for the proceeds of the actual sales and
receipts, unless by negligence, misconduct, or bad faith he did not realize the
full value of the property; and then he would be liable for its real value, but
not for probable or speculative profits.

Appeal from the Chancery Court of Washington County.
Hon. E. Stafford, Chancellor.

The case is stated in the opinion of the court.

*Nugent & Mc Willie,* for the appellants.

1. The order appointing the receiver directed him to "take
possession of the stock and business" of the partnership. He
was not directed to continue or carry on the business of the
firm. The proceedings against him were, therefore, improper.
He was not liable to account for speculative profits which he.
might have made, but did not in fact make.

2. The partnership was practically dissolved by the appoint-
ment of the receiver. A decree of dissolution should have
been rendered, and an account ordered to be taken between the
partners on well-recognized principles, so that something like
justice should be done.

*Phelps & Skinner,* for the appellee.

1. In a very short time after the receiver took possession of
the saloon and its contents, the court made an order for resti-
tution thereof, which the receiver persistently disobeyed. He
voluntarily proceeded, however, to carry on the business with
the property and its proceeds under his charge, and under the
firm's revenue license, for the period of six months, as fully
proven and not denied. He should, therefore, be held to ac-
count for the actual profits made, as any trustee or other
fiduciary would be compelled to do, who makes a profit from
his trust fund. Story's Eq. Jur. 1277 *a.*

2. The court below, by two citations and one or two attach-

ments against the receiver, at several successive terms of court, sought to compel him to report, and discover the profits he had made, which from first to last he refused to do. The appellee was, therefore, permitted to prove the profits he made by the only practicable means, viz., by showing what a prudent man could and would have made in the business on the capital in the receiver's possession, for the time he so used it. This was done, and the commissioner's report duly made and confirmed, and ought to be sustained, as there is no complaint of the fairness of the result upon the evidence.

*Frank Johnston*, on the same side.

SIMRALL, C. J., delivered the opinion of the court.

James Demain, James Tiernay, and Hugh Cassidy, on December 20, 1873, formed a partnership to carry on the business of retailing liquor by the small — what is called " keeping a saloon " — cigars and tobacco being adjuncts. Cassidy was the active managing member, and was held out to the public as sole owner, the others being silent partners.

Tiernay and Demain, in May, 1873, brought their bill against Cassidy for the purpose of dissolving and winding up the partnership, alleging neglect and mismanagement, and drunkenness; they also prayed for an injunction and receiver. The chancellor endorsed a fiat on the bill for the injunction to issue, and also an order appointing Tiernay receiver. Cassidy very promptly answered, and on the bill and answer moved for a dissolution of the injunction and an annulment of the order appointing a receiver. Both motions were sustained; so that, about fifteen days after these orders were made, the injunction was dissolved, and the order appointing a receiver revoked.

Further proceedings were for awhile stopped by a suspensive appeal, which was dismissed for want of prosecution. On January 27, 1875, an order was made directing the receiver to restore the property to Cassidy, and for an account, in which he should give a detailed statement of the property, sales, and

profits. He reported that the stock received by him amounted to $317, of which he had sold for cash to the amount of $185, and on a credit to the amount of $181; that he had on hand $30 of the stock, and fixtures worth $26; that he had expended for rent, $5; expenses, $20; services, $25. Exceptions were sustained to this report, and the matter was referred to a commissioner.

The commissioner took testimony and reported that the receiver ought to have made a profit of $150 per month, for six months, aggregating in profits $900; and that he ought to have had a stock of $317, as much as he started with, which would leave him indebted to the firm $1,217. From this sum a small deduction was made for rent and incidental expenses. Exceptions of the receiver to the report were overruled; the report was confirmed, and he was directed to pay the balance, amounting to the large sum of $1,100, into court.

The chancellor seemed to be in haste to appoint a receiver, acting exclusively on the allegations of the bill; but fifteen days afterwards that step was retraced. No instructions were given to the receiver; he was not directed to keep open the saloon and continue the sales. In the absence of specific, detailed authority over the property, his duties were such as the law imposed, and that was to take charge of the property and safely keep it, subject to the further order of the court. But, the solicitors of Cassidy have proceeded throughout, with the sanction of the court, on the idea that the receiver must continue the business and account for profits; and since his reports were not satisfactory, then it was open to inquiry as to what probable profits an ordinarily prudent man might have made — and on that basis he should account. It seems, also, to have been the opinion of the receiver that he ought to sell off the stock.

Cassidy could hold the receiver responsible for the value of the property that came to his possession, but since the receiver acted on the assumption that he could dispose of the stock by sales, the accounting should be on the basis of the actual sales

and receipts, unless there was negligence, misconduct, or bad faith, by reason of which the goods were wasted, and did not realize their value — in which case the receiver would be liable, not for probable or speculative profits, but for the value of the property.

The principles on which the account was taken were unsound and utterly unsafe, as the result shows. From the best information before the commissioner, the property received by the receiver was worth $317, or thereabouts. Yet the conclusion is reached that he might have made $900 profits on that capital, and still had as much liquor, cigars, and tobacco as he started with. The exceptions to this report were well taken on this point, and ought to have been sustained. It would be impossible to state an account correctly between the partners until it had been ascertained what was due from the receiver.

The decree is reversed and cause remanded for another account to be taken of the doings of the receiver, and also an account between the partners.